**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X
JOSE VALERIO, on behalf of himself  and
all others similarly situated,


          Plaintiff,        **MEMORANDUM**
                    **AND ORDER**
    - against -
               CV 14-3761 (LDW) (AKT)


RNC INDUSTRIES, LLC and RICHARD
TONYES, in his individual and professional
capacities,


          Defendants.
--------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

  Jose Valerio ("Plaintiff" or "Valerio") brings this wage and hour action, individually and

on behalf of other persons similarly situated, against Defendants RNC Industries, LLC ("RNC")

and Richard Tonyes ("Tonyes"), in both his individual and professional capacities (collectively,

"Defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the

New York Labor Law ("NYLL") §§ 160, 195, 652(1) and 12 New York Codes, Rules and

Regulations ("NYCRR") §142.  Plaintiff alleges that the Defendants implemented a policy in

which they refused to pay their employees both the required minimum wage rate for all hours

worked as well as the required overtime rate for all hours worked in excess of 40 hours per week.

*See generally* Complaint ("Compl.") [DE 1].

  Plaintiff now moves for (1) conditional certification as a collective action and (2) Court

approval of Plaintiff's proposed Notice of Pendency to potential collective action members,

pursuant to 29 U.S.C. § 216(b).  *See* Plaintiff's Motion for Conditional Certification and Notice

Pursuant to 29 U.S.C. § 216(b) ("Pl.'s Mot.") [DE 31].  Defendants oppose the motion asserting,

among other things, that Plaintiff has not identified a specific common policy or practice which violates the law.  *See* Defendant's Memorandum of Law in Opposition of Plaintiff's Motion for Conditional Certification and Notice Pursuant to 29 U.S.C. § 216(b) ("Defs.' Opp'n")[DE 35].  Based on the Court's review of the parties' submissions as well as the applicable case law, Plaintiff's motion is hereby GRANTED, subject to the limitations set forth in this Memorandum and Order.

## I.  BACKGROUND

The following asserted facts are taken from the Complaint and declarations submitted in support of Plaintiff's motion for conditional certification.  Defendant Tonyes owns and operates a construction contracting business under the trade name RNC, whose principal place of business is located at 720 Blue Point Road in Holtsville, New York.  *See* Compl. ¶¶ 29, 31; March 30, 2015 Declaration of Plaintiff Jose Valerio [DE 31-5] ("Valerio Decl.")  ¶ 2, attached as Ex. 3 to the March 30, 2015 Declaration of Anthony P. Malecki ("Malecki Decl."); March 30, 2015 Declaration of Opt-In Plaintiff Carlos Humberto Romero Carrillo [DE 31-6] ("Carrillo Decl.")  ¶ 2, attached as Ex. 4 to the Malecki Decl.  All managerial decisions are made by Tonyes, including those concerning employee compensation and employee work schedules.  *See* Compl. ¶¶ 29-30.

Plaintiff worked for Defendants from on or about April 2011 through May 2014.  *Id.* ¶ 32; Valerio Decl. ¶ 1.  During Plaintiff's employment, his principal responsibilities entailed manual labor, including working as a welder, mechanic, and driver.  Compl. ¶ 33; Valerio Decl. ¶ 1.  Plaintiff generally worked five to six days per week at a rate of $18 to $21 per hour.  Compl. ¶¶ 34-35; Valerio Decl. ¶ 3.  Typically, during the work-week, Plaintiff worked between 80 and 85 hours.  Compl. ¶ 34; Valerio Decl. ¶ 3.  Despite working in excess of 40 hours per

week, Plaintiff states that Defendants regularly reduced Plaintiff's total hours worked per week by 10-12 hours and did not pay Plaintiff overtime for all hours worked in excess of 40 hours per week. Compl. ¶ 36; Valerio Decl. ¶¶ 4-5. When Plaintiff approached Defendants' Purchase Manager, Steve Poulos, regarding this discrepancy, Plaintiff was told that his daily wages would be reduced by two hours for the time spent driving to and from Defendants' office to field locations and back. Compl. ¶ 37. During his time working for Defendants, Plaintiff interacted with other non-managerial employees who performed similar job duties, who worked a similar amount of hours and who were not paid for all hours worked. Valerio Decl. ¶ 6. Specifically, Plaintiff states that he worked with Opt-In Plaintiffs Bruno Romero ("Romero"), Ancelmo Chica-Vigil ("Chica-Vigil"), Jose Mendoza ("Mendoza") and Carlos Humberto Romero Carillo ("Carillo"). Based upon his experiences and discussions with these individuals, Plaintiff asserts that they also worked in excess of 40 hours per week and were not paid for all hours worked.[1] *Id*. ¶ 7. In addition, Plaintiff claims that Defendants did not record nor did they permit Plaintiff or Opt-In Plaintiffs to record hours worked nor did they furnish Plaintiff or Opt-In Plaintiffs with wage statements as required under the NYLL. Compl. ¶¶ 38, 40.

Opt-In Plaintiff Carillo submitted a declaration in which he alleges similar grievances concerning the number of hours he worked and the amount of pay he received. *See generally* Carillo Decl. Specifically, Carillo claims that he worked for Defendants as a laborer from approximately March 2008 through March 2014. *Id*. ¶ 1. During his employment, Carillo was regularly required to work more than 40 hours per week but was not paid for hours worked in

---

[1]     The record contains the Consent to Join Collective Action notices for these Opt-In Plaintiffs in which each asserts that they were required to work for Defendants in excess of 40 hours per week and were not compensated for all hours worked in excess of 40 hours per week, were not paid overtime for these hours and were not paid the required spread-of-hours compensation in accordance with federal and state law. *See* Consent to Join Collective Action Notices [DE 31-7 through 31-11], annexed as Exs. 5-9 to the Malecki Decl.

excess of 40 at the required overtime rate. *Id*. ¶¶ 3-4. Carillo adds that while working for

Defendants, he interacted with other non-managerial employees who performed similar job

functions. Based upon these interactions, Carillo states that these other employees performed

similar job functions, worked approximately the same number of hours and were not paid for all

hours worked in excess of 40 at the required overtime rate of pay. *Id*. ¶ 5.

As a result of Defendants' practices, Plaintiff maintains that he and "all FLSA Plaintiffs

are victims of Defendants' pervasive practice of willfully refusing to pay their employees

overtime compensation for all hours worked per workweek above forty, or at the minimum wage

rate for each hour worked." Compl. ¶ 17. Plaintiff thus brings this action, individually and on

behalf of individuals similarly situated, to recover for Defendants' violations of the FLSA and

NYLL. Plaintiff now seeks to conditionally certify the FLSA claims pursuant to 29 U.S.C.

§ 216(b).

## II.   LEGAL STANDARD

The FLSA provides, in pertinent part, as follows:

> Any employer who violates the provisions of section 206 or
> section 207 of this title shall be liable to the employee or
> employees affected in the amount of their unpaid minimum wages,
> or their unpaid overtime compensation, as the case may be, and in
> an additional equal amount as liquidated damages . . . An action to
> recover . . . may be maintained against any employer (including a
> public agency) in any Federal or State court of competent
> jurisdiction by any one or more employees for and in behalf of
> himself or themselves and other employees similarly situated. No
> employee shall be a party plaintiff to any such action unless he
> gives his consent in writing to become such a party and such
> consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Section 216(b) provides an employee with a private right of action to

recover overtime compensation and/or minimum wages. *Id*.; *Moore v. Eagle Sanitation, Inc.*,

276 F.R.D. 54, 57 (E.D.N.Y. 2011); *Bifulco v. Mort. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y.

2009); *Gjurovich v. Emmanuel's Marketplace, Inc*., 282 F. Supp. 2d 101, 103 (S.D.N.Y. 2003).

"Although the FLSA does not contain a class certification requirement, such orders are often

referred to in terms of 'certifying a class.'" *Bifulco*, 262 F.R.D. at 212 (citations omitted).

Courts within the Second Circuit apply a two-step analysis to determine whether an

action should be certified as an FLSA collective action.  *See Myers v. Hertz Corp.*, 624 F.3d 537,

544-45 (2d Cir. 2010) (noting that district courts within this Circuit have "coalesced around a

two-step method" for analyzing collective action certification); *Alvarez v. IBM Restaurants Inc.*,

839 F. Supp. 2d 580, 583 (E.D.N.Y. 2012); *Bijoux v. Amerigroup New York, LLC*, No. 14-CV-

3891, 2015 WL 4505835, at *2 (E.D.N.Y. July 23, 2015); *Amador v. Morgan Stanley & Co.,

LLC*, No. 11 Civ. 4326, 2013 WL 494020, at *2 (S.D.N.Y. Feb. 7, 2013).  First, the court

determines whether the proposed class members are "similarly situated."  *McGlone v. Contract

Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012); *Rubery v. Buth-Na-Bodhaige, Inc.*, 569

F. Supp. 2d 334, 336 (W.D.N.Y. 2008); *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 480

(E.D.N.Y. 2001).  If the court decides in the affirmative, then the proposed class members must

consent in writing to be bound by the result of the suit, or "opt-in."  *McGlone*, 867 F. Supp. 2d at

442; *see* 29 U.S.C. § 216(b).  The second step, which typically occurs after the completion of

discovery, requires the court to make factual findings whether the class members are actually

similarly situated.  *Rosario v. Valentine Ave. Discount Store, Co.*, 828 F. Supp. 2d 508, 514

(E.D.N.Y. 2011); *Bifulco*, 262 F.R.D. at 212.  "At that juncture, the court examines the

evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to

the named plaintiff."  *Bifulco*, 262 F.R.D. at 212 (quotations omitted).

The instant motion concerns only the first step — whether the proposed opt-in members

are "similarly situated" such that conditional certification should be granted.  At this stage, "the

evidentiary standard is lenient," *Rubery*, 569 F. Supp. 2d at 336, and plaintiffs need only "make a

'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a

common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 (quoting *Hoffmann v.*

*Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); *see, e.g.*, *Doucoure v. Matlyn Food, Inc.*,

554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008); *Perez v. Allstate Ins. Co.*, No. 11-CV-1812, 2014

WL 4635745, at *5 (E.D.N.Y. Sept. 16, 2014); *Trinidad v. Pret A Manger (USA) Ltd.*, 962

F. Supp. 2d 545, 552 (S.D.N.Y. 2013); *Cano v. Four M Food Corp.*, No. 08-CV-3005, 2009 WL

5710143, at *3 (E.D.N.Y. Feb 3, 2009).  "In making this showing, 'nothing more than substantial

allegations that the putative class members were together the victims of a single decision, policy

or plan' is required." *Sexton v. Franklin First Fin., Ltd.*, No. 08 Civ. 4950, 2009 WL 1706535,

at *3 (E.D.N.Y. June 16, 2009) (quoting *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387

(W.D.N.Y. 2005)).  Moreover, courts have repeatedly stated that Section 216(b)'s "similarly

situated" requirement is "considerably less stringent" than the requirements for class certification

under Federal Rule of Civil Procedure 23, and "that a party seeking to maintain a collective

action need not meet the requirements of Rule 23 for class certification." *Rodolico*, 199 F.R.D.

at 481 (collecting cases); *see Dilonez v. Fox Linen Serv., Inc.*, 35 F. Supp. 3d 247, 252 (E.D.N.Y.

2014) (stating that a collective action under the FLSA "is different than a typical class action

under the Federal Rules of Civil Procedure, the strict requirements of which – numerosity,

commonality, typicality, and adequate representation – do not apply to a collective action").

At the initial certification stage, courts do not require proof of an actual FLSA violation,

"but rather that a 'factual nexus' exists between the plaintiff's situation and the situation of other

potential plaintiffs." *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007)

(quoting *Wraga v. Marble Lite, Inc.*, No. 05 Civ. 5038, 2006 WL 2443554, at *1 (E.D.N.Y. Aug.

22, 2006)); *see Fa Ting Wang v. Empire State Auto Corp.*, No. 14-CV-1491, 2015 WL 4603117, at *6 (E.D.N.Y. 2015); *Calderon v. King Umberto, Inc.*, 892 F. Supp. 2d 456, 459 (E.D.N.Y. 2012). This determination is typically "based on the pleadings, affidavits and declarations" submitted by the plaintiff or plaintiffs. *Fa Ting Wang*, 2015 WL 4603117, at *6; *see Robles v. Liberty Rest. Supply Corp.*, No. 12-CV-5021, 2013 WL 6684954, at *5 (E.D.N.Y. Dec. 18, 2013); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006) (court's initial determination based on "pleadings and affidavits"); *see also Hallissey v. Am. Online, Inc.*, No. 99 Civ. 3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008) ("Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members.").

"[A]lthough the burden on the plaintiff at this preliminary stage is modest, 'it is not non-existent.'" *Boice v. M+W U.S., Inc.*, No. 14-CV-0505, --- F. Supp. 3d ---, 2015 WL 5316115, at *11 (N.D.N.Y. Sept. 11, 2015) (quoting *Khan v. Airport Mgmt. Servs., LLC*, No. 10–CV–7735, 2011 WL 5597371, at *5 (S.D.N.Y. Nov. 16, 2011)). As the Second Circuit has explained, "[t]he 'modest factual showing' cannot be satisfied simply by 'unsupported assertions.'" *Myers*, 624 F.3d at 555 (quoting *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991)); *see Morales v. Plantworks, Inc.*, No. 05 CIV. 2349, 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (stating that "conclusory allegations are not enough" to meet the "modest factual showing" at the first stage of collective action certification).

However, the standard of proof should still remain "low . . . because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (citing *Hoffman*, 982 F. Supp. at 261) (emphasis in original); *see Trinidad*, 962 F. Supp. 2d at 553. With this in mind, courts have routinely found that the allegations in the

pleadings and the "personal observations of one plaintiff's affidavit" are "sufficient to make the modest factual showing necessary to conditionally certify [a] class." *Hernandez v. NGM Mgmt. Grp. LLC*, No. 12 CIV. 7795, 2013 WL 5303766, at *3 (S.D.N.Y. Sept. 20, 2013) (collecting cases); *see Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-CV-2625, 2015 WL 4240985, at *3 (S.D.N.Y. July 13, 2015) (finding that the allegations in the complaint and the affidavit of one named plaintiff "met the minimal burden at this preliminary stage of demonstrating that [the plaintiffs] were subject to a common policy or practice and were 'similarly situated' to one another and to potential opt-in plaintiffs"); *Kemper v. Westbury Operating Corp.*, No. CV 12-0895, 2012 WL 4976122, at *2 (E.D.N.Y. Oct. 17, 2012) (granting conditional certification for overtime claims based on affidavit of the named plaintiff); *Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, No. 12 CIV. 265, 2012 WL 1981507, at *1 (S.D.N.Y. June 1, 2012) (granting motion for conditional certification based on declaration by the plaintiff "confirming that she and other non-exempt employees employed by defendants in tipped positions, who performed work similar to hers, were, *inter alia*, paid less than the statutory minimum wage and not paid overtime pay") (citing *Bowens v. Atlantic Maintenance Corp.*, 546 F. Supp. 2d 55, 82 (E.D.N.Y. 2008)); *Wraga*, 2006 WL 2443554, at *2 (granting motion to certify collective action based on single plaintiff's affidavit alleging failure to pay overtime where he stated that he was aware, based upon personal conversations, of approximately 18 other employees who were subject to the same policies); *see also Doucoure*, 554 F. Supp. 2d at 373 (permitting preliminary certification where plaintiff offered his complaint which contended that he routinely worked in excess of forty hours per week, the defendant failed to pay him overtime, and there were similarly situated hourly employees also denied overtime).

III.   <u>DISCUSSION</u>

A.   **Conditional Certification**

Plaintiff seeks conditional certification as to the following group:

> [A]ll other current and former similarly situated non-managerial
> employees, employed since June 16, 2011.

[Proposed] Court Authorized Notice of Lawsuit ("Proposed Notice") [DE 31-12], attached as

Ex. 10 to Malecki Decl.  Plaintiff asserts that he has satisfied the first step of the conditional

certification analysis – that is, he has adequately shown that there are other similarly situated

employees who were "victims of Defendants' pervasive practice of willfully refusing to pay their

employees overtime compensation for all hours worked per workweek in excess of forty, or at

the minimum wage rate for each hour worked."  Compl. ¶ 17.  In moving for conditional

certification, Plaintiff relies on the facts alleged in the Complaint, his own declaration and the

Carillo declaration.  *See* Section I *supra* (summarizing relevant information in the Complaint as

well as the declarations provided in support of the instant motion); *see generally* Valerio Decl.;

Carillo Decl.

In opposition to the motion, Defendants have submitted the declaration of Jonathan

Bardavid, attorney for Defendants.  *See* May 11, 2015 Declaration of Jonathan Bardavid

("Bardavid Decl.") [DE 36].  Attached to the Bardavid Declaration are selected excerpts from the

depositions of Plaintiff Valerio and Opt-In Plaintiffs Romero, Chica-Vigil and Mendoza.[2]

*See* Bardavid Decl, Exs. 1-4.  However, it is not appropriate at this preliminary certification stage

for the Court to make factual findings whether any of the testimony contained in these deposition

excerpts rebuts Plaintiff's assertions that (1) he was similarly situated to the Opt-In Plaintiffs or

---

[2]   In the first instance, the Court points out that these excerpts are not particularly helpful
because the context in which some of the questions were asked and answered is omitted,
resulting in less clarity than more.

(2) he and the Opt-In Plaintiffs were in fact subject to a common policy or scheme which deprived both Plaintiff and all those similarly situated of overtime compensation. *See Perkins v. S. New England Tel. Co.*, 669 F. Supp. 2d 212, 219 (D. Conn. 2009) ("The court notes that, in highlighting specific sections of deposition testimony . . . [Defendant] appears to be couching arguments about the merits of the [] case[.]  [However], [a]t the certification stage, a court need not judge the merits of the plaintiffs' claims because they are irrelevant to the collective action inquiry, as long as plaintiffs assert a plausible basis for their claim.); *Garcia v. Four Bros. Pizza*, No. 13 CV 1505, 2014 WL 2211958, at *6 (S.D.N.Y. May 23, 2014) (refusing to consider deposition testimony that would undermine plaintiff's FLSA claims at the conditional certification stage since "the Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of similarly situated plaintiffs can exist here. . . .") (internal quotations and citation omitted); *see also Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 633 (S.D.N.Y.2007); *Indergit v. Rite Aid Corp.*, Nos. 08 CIV 9361, 08 CIV 11364, 2010 WL 2465488, at *4 (S.D.N.Y. June 16, 2010) ("[T]he court does not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations.") (internal citation omitted); *Stevens v. HMSHost Corp.*, No. 10 Civ. 3571, 2012 WL 4801784, at *3 (E.D.N.Y. Oct. 10, 2012) (recognizing that defendant's submission of declarations of current employees "cannot be used to undermine a plaintiff's initial showing because doing so would require a court to weigh evidence and determine credibility, which is not appropriate until the second stage after discovery") (citing *Ferreira v. Modell's Sporting Goods, Inc.*, No. 11 Civ. 2395, 2012 WL 2952922, at *3 (S.D.N.Y. July 16, 2012)); *Bates v. Valente Landscaping, Inc.*, No. 14 Civ. 1434, 2014 WL 2111080, at *1 (E.D.N.Y. May 21, 2014) (noting that court is not to "resolve factual disputes, decide substantive issues going to the merits, or make credibility determinations"

during the first step in the certification process) (internal quotations and citation omitted); *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 665 (S.D.N.Y. 2013) ("[T]he Court at this point does not weigh the evidence or speculate concerning plaintiffs' ultimate ability to succeed on the merits.") (internal quotations omitted). Rather, the Court must be satisfied that the proffered evidence provides some support, however marginal, to Plaintiff's factual showing that he and the potential Opt-In Plaintiffs were subject to an unlawful policy or practice, namely, Defendants' policy of failing to pay proper wages and overtime compensation to non-exempt employees — actions, which, if proven, violate the FLSA.

Having reviewed the motion for conditional certification, the Court finds that Plaintiff has made the "modest factual showing" necessary to demonstrate that he and the potential plaintiffs together "were victims of a common policy or plan that violated the law." *See Doucoure*, 554 F. Supp. 2d 369, 372; *Sbarro*, 982 F. Supp. at 261; *Trinidad*, 962 F. Supp. 2d at 552-53. Further, Plaintiff has established a "sufficient factual nexus" between his situation and that of the putative collective. *See Sobczak*, 540 F. Supp. 2d at 362; *Wraga*, 2006 WL 2443554, at *1.

In his declaration, Plaintiff outlines the purported "common policy or plan" which violated the FLSA and the NYLL. Although perhaps lacking in granular specificity, Plaintiff sufficiently alleges that during his employment with Defendants, he was: (1) required to work approximately 80-85 hours per week; (2) subjected to a reduction of 10-12 hours of work from each weekly pay period and (3) otherwise not paid at the required overtime rate for all hours worked in excess of 40 hours. *See* Valerio Decl. ¶¶ 3-5; Compl. ¶¶ 15, 34, 36. In addition, Plaintiff's declaration sufficiently asserts that other similarly situated employees of Defendants did not receive proper overtime compensation. Plaintiff maintains that during his employment,

11

he spoke with other non-managerial employees who were engaged in similar duties and based upon "his experience working with these individuals . . . [he] knows that they worked a similar amount of hours as [himself] and were not paid for all of the hours they worked at their overtime rate of pay . . . ." Valerio Decl. ¶ 6.  Furthermore, Plaintiff also alleges that he worked with the four Opt-In Plaintiffs and through his "experience working with them and [through his] discussions with them . . . know[s] that they worked more than forty hours per week and were not paid for all of these hours at their overtime rate. . . ." *Id.* ¶ 7.

As part of his motion, Plaintiff submitted the Carillo Declaration which similarly alleges that Defendants, through a common policy, deprived Carillo and those similarly situated of overtime pay for hours worked in excess of 40 per week.  *See generally* Carillo Decl. Specifically, Carillo states that he was required to work in excess of 40 hours per week and that Defendants "failed to pay [him] for all of the hours [he] worked over forty per week at [his] overtime rate of pay. . . ." *Id.* ¶ 4.  In addition, Carillo asserts that he "interacted with other non-managerial employees who performed similar duties as [he] did [and that] [b]ased on [his] experience working with these individuals [he] know[s] that they worked a similar amount of hours . . . and were not paid for all of the hours they worked at their overtime rate of pay. . . ." *Id.* ¶ 5.

As discussed, a plaintiff in an FLSA case must meet only a minimal evidentiary burden at the collective action certification stage.  *See Damassia v. Duane Reade Inc.*, No. 04 Civ. 8819, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006) (characterizing a plaintiff's burden at this stage as "minimal"); *Lee*, 236 F.R.D. at 197 (recognizing plaintiff's minimal burden at this stage).  The Court finds that the allegations set forth in Plaintiff's Declaration and the Carillo Declaration, together with the facts alleged in the Complaint, establish a sufficient factual nexus between

Plaintiff's situation and that of other employees working as hourly laborers to warrant

conditional certification of a collective action in the instant case. *See Garcia*, 2014 WL

2211958, at *5 (recognizing that plaintiffs' complaint, deposition testimony and affidavits in

which they asserted that they worked between sixty and seventy-two hours per week, were not

paid overtime compensation for hours worked in excess of 40 hours per week and were not paid

the required minimum wage was sufficient to permit collective action certification) *See

generally*, *Bhumithanarn*, 2015 WL 4240985, at *3; *Kemper*, 2012 WL 4976122, at *2;

*Khamsiri*, 2012 WL 1981507, at *1.  If it appears upon the close of discovery that any Opt-In

Plaintiffs are not in fact similarly situated, then, at that juncture, Defendants will have the

opportunity to move for de-certification. *See Myers*, 624 F.3d at 555.

 The Court has considered Defendants' arguments in opposition to the motion and, for the

reasons which follow, finds them unpersuasive.  First, Defendants suggest that no factual nexus

exists because the "crux of Plaintiff's claim is Defendants deducted up to two hours a day from

his hours worked for time spent traveling between RNC's office . . . and various field

construction sites" and "Plaintiff concedes none of the RNC employees identified in his

Declaration and/or who have opted into this litigation ever drove from RNC's offices to field

locations." Defs.' Opp'n at 8.  Initially, the Court points out that at the preliminary certification

stage, "the focus of the court's inquiry is not on the defendants' evidence, but on whether the

plaintiff[] ha[s] made the[] requisite showing." *Bijoux*, 2015 WL 4505835, at *13 (internal

quotations and alteration omitted).  As such, and as stated previously, the Court will not, at this

stage, make its determination based on the excerpted deposition testimony upon which

Defendants rely in support of their argument that no factual nexus exists.  To do so would require

the Court to engage in a merits inquiry which is inappropriate at the preliminary certification

stage. *Lassen v. Hoyt Livery, Inc.*, No. 3:13-cv-01529, 2014 WL 4638860, at *6 (D. Conn. Sept. 17, 2014) (noting that at the conditional certification stage, the court does not "weigh evidence or resolve factual disputes and, consequently, [evidence] calling into some question plaintiff's factual claims are not controlling"); *Ahmed v. T.J.Maxx Corp*, No. CV 10-3609, 2014 WL 5280423, at *3 (E.D.N.Y. Sept. 24, 2014) ("At the conditional certification stage, 'the court does not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations.'" (quoting *Amador*, 2013 WL 494020, at *2-3); *Anjum v. J.C. Penney Co., Inc.*, No. 13 CV 460, 2015 WL 3603973, at *5 (E.D.N.Y. Jun. 5, 2015). Defendants base their argument that Plaintiff is not similarly situated to the putative Opt-In Plaintiffs on the premise that Defendants' uniform policy, to the extent one exists, is a "refus[al] to pay for time traveled from RNC's construction yard to construction sites." Defs.' Opp'n at 7. However, after reviewing Plaintiff's materials in support of the instant motion, that argument is a strained interpretation of Plaintiff's claims.

While it is true that Plaintiff alleges he was not paid for hours worked in excess of 40 during the workweek, *see* Compl. ¶¶ 3, 36; Valero Decl. ¶ 4, the gravamen of Plaintiff's allegation of a common policy is not Defendants' failure to pay Plaintiff for time expended traveling to field construction sites. Rather, the allegation stems from Defendants' purportedly widespread practice of generally not paying overtime to non-managerial employees — regardless of the particular factual circumstances underlying the lack of payment of overtime compensation. *See* Compl. ¶ 17; Valerio Decl. ¶ 5. A straightforward reading of Plaintiff's allegations illustrates that the common policy complained of centers on Defendants' failure to pay non-managerial employees for hours worked, including overtime compensation, and that this policy

impacted Plaintiff as well as those similarly situated to Plaintiff.[3]  *See* Compl. ¶¶ 15, 17; Valerio Decl. ¶¶ 5-7; *see also* Carrillo Decl. ¶¶ 3-5.  In this Circuit, plaintiffs need only make a "'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 (quoting *Hoffmann*, 982 F. Supp. at 261); *see Garcia*, No., 2014 WL 2211958, at *4 (S.D.N.Y. May 23, 2014).  The statements proffered by Plaintiff sufficiently allege, at least at this stage, that Defendants engaged in a common policy which violated the law and that Plaintiff and others similarly situated were victims of that policy.  Nothing more is required at this preliminary stage.

Second, to the extent Defendants allege that Plaintiff's "boilerplate allegations" and "bare bones" declarations cannot provide the basis for conditional certification, *see* Defs.' Opp'n at 8, such arguments are unavailing.  *See Bifulco*, 262 F.R.D. at 215 (despite defendant's argument that "each of the declarations submitted [is] identical in form and accusations," court found that plaintiffs and opt-in plaintiffs were similarly situated); *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 131 (E.D.N.Y. 2011) (where defendant's objected to supporting affidavits being "essentially identical," court found that factual allegations in the affidavits were sufficient to meet the "modest" or "preliminary showing" evidentiary standard); *Lassen*, 2014 WL 4638860, at *6 (notwithstanding defendants' argument that 12 driver affidavits were "boilerplate," at the conditional certification stage, the court does not "weigh evidence or resolve factual disputes and, consequently, affidavits calling into some question plaintiff's factual claims are not controlling").

---

[3]      In any event, even if Defendants' interpretation of Plaintiff's claims had merit, under such a reading, Plaintiff would still have worked a minimum of 68 hours per week.  Therefore, if the allegations are proven, Plaintiff would still be entitled to overtime compensation under the FLSA and NYLL.

Third, Defendants assert that "Plaintiff's attempt to conditionally certify this case as a collective actions on behalf of all non-managerial employees of RNC is overbroad . . . [since] Plaintiff has [not] submitted any evidence [] that the alleged pay practices extend beyond RNC's office in Holtsville, New York" and because "the majority of [Defendants' employees] work at various field locations."  Defs.' Opp'n at 8.  In support of these assertions Defendants primarily rely upon this Court's decision in *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443 (E.D.N.Y. 2014). In *Sharma* the Court was confronted with a motion for collective action certification involving Burberry Sales Associates who claimed that they worked in excess of 40 hours per week without receiving overtime compensation.  *Id.* at 446.  Plaintiffs claimed that Burberry's pay practices were "widespread" and were similar throughout all of Burberry's 65 stores nationwide.  *Id.* at 446-47.  After analyzing plaintiffs' submissions in support of their motion, this Court granted conditional  certification with respect to those employees who worked at the Manhasset and Roosevelt Field, New York locations since "[t]he Plaintiffs' declarations articulate that Burberry had a policy of requiring [Sales Associates] to work uncompensated overtime at these two New York locations."  *Id.* at 457.  However, this Court declined to certify a nationwide collective because

> [p]laintiffs' submissions do not include sufficient evidence of a nationwide common policy or plan to deny [Sales Associates] pay for overtime. As the Second Circuit has made clear, the requisite modest factual showing "cannot be satisfied simply by unsupported assertions." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir.2010) (internal quotation marks omitted). Plaintiffs' motion relies precisely on such unsupported assertions to the extent Plaintiffs seek nationwide certification. Contrary to Plaintiffs' personal knowledge as to the pay practices at the stores in which they worked, Plaintiffs' assertions about the pay practices at other stores across the country are conclusory and unsupported.

*Id.* at 459.

16

Although Defendants here analogize the factual scenario in *Sharma* with the case at bar, the underlying facts are different and compel a different result.  In *Sharma*, the plaintiffs sought certification of a nationwide collective encompassing 65 separately operated Burberry store locations.  However, plaintiffs offered no concrete evidence as to their knowledge concerning the pay practices at the majority of store locations for which they sought certification.  As such, the Court declined to certify the collective.  *Id*.  Furthermore, *Sharma* involved a multi-national corporation with a worldwide footprint and many different independent locations.  That is not the case here.  The instant case concerns an employer with one principal place of business located at 420 Blue Point Road in Holtsville, New York.  *See* Compl. ¶ 10; Valerio Decl. ¶ 2; Carrillo Decl. ¶ 2.  In addition, no evidence has been presented suggesting that Defendants operate a nationwide construction enterprise.  Rather, as Defendants themselves state — "[t]he majority of RNC's employees work at various construction sites in the Tristate area."  Defs.' Opp'n at 3.  Therefore, to the extent Defendants attempt to analogize their employees — who work within a relatively narrow geographic range — to employees in *Sharma* who worked at various Burberry locations across the country, such an analogy is ineffective.

Defendants next assert that, because Plaintiff has not interposed factual allegations relating to Defendants' "field" employees, any notice should be limited to only those employees who worked at Defendants' Holtsville location.  *See* Defs.' Opp'n at 9.  Unlike *Sharma*, Plaintiff in this case is not seeking to certify a nationwide collective which could potentially involve hundreds of employees.  Rather, Plaintiff seeks to certify a class of non-managerial employees who work for an employer which operates a business with a single locus of operations.  To that end, and notwithstanding whether such non-managerial employees work in satellite work-sites or at Defendants' Holtsville location, the allegations in the Complaint and the declarations

submitted in support of Plaintiff's motion clear the hurdle at this first stage — at least with respect to those *laborers* working at any of RNC's worksites / field locations on Long Island.

Although Plaintiff's proposed class consists of all "non-managerial employees" working for Defendants at any of their locations, *see* Malecki Decl., Ex. 10, Plaintiff has not provided the Court with any information — in the form of affidavits, declarations or other evidence — which could support such a broad class definition at this stage. Indeed, in *Sharma*, this Court commented that "[c]ourts in this Circuit have commonly authorized the sending of collective action notices where plaintiff *includes some probative information* regarding similarly situated employees. . . ." *Id.* at 459 (internal quotations and citation omitted) (alteration in original) (emphasis added). In the instant case, Plaintiff has not provided the Court with the requisite probative information necessary to support the broad class definition he seeks. Instead, the information provided to date supports a class definition encompassing only *laborers* who worked at RNC during the relevant period at any locations/ worksites on Long Island. The information supplied by both Plaintiff and the Opt-In Plaintiffs establishes that they were all "laborers" (*i.e.* carpenters, welders, mechanics). Since it is likely that RNC employs non-managerial workers who are not laborers (*e.g.*, secretaries, clerical workers), it would be inappropriate at this stage to include all non-managerial employees in a class definition where the evidence submitted encompasses only those employees who performed work as laborers. In addition, the affidavits and declarations submitted show only that Plaintiff and Opt-In Plaintiffs worked at two locations on Long Island. Therefore, a class definition encompassing any broader geographic scope is likewise unsupported by Plaintiff's submissions. If at some timely juncture Plaintiff comes forward with information from any RNC employee laborers who work at a non-Long Island location, such information could potentially give rise to a broadening of the class definition.

18

However, on the existing facts, the Court concludes that Plaintiff's proposed class definition is overbroad as written.  *See Myers*, 624 F.3d at 555 (recognizing that a plaintiff need only make a modest factual showing to satisfy his burden at the first-stage of a collection action inquiry but that such a showing "cannot be satisfied simply by unsupported assertions.").

Although not cited by Plaintiff or Defendants, the Court finds that the case of *Morris v. Lettire Constr. Co.*, 896 F. Supp. 2d 265 (S.D.N.Y. 2012) presents circumstances much more on point with those at issue here.  In *Morris*, plaintiffs consisted of a group of former foremen and laborers who worked for defendants, a common enterprise, at one or more of defendants' construction sites in the Tri-State area.  *Id*. at 267.  Plaintiffs alleged that defendants failed to pay them as well as putative class members overtime compensation for hours worked in excess of 40 hours per week, in violation of the FLSA and the NYLL, and failed to pay them prevailing wages under NYLL and New York common law.  *Id*. at 267-68.  Plaintiffs further claimed that the non-payment of wages and overtime was not isolated to themselves, but rather constituted a company-wide policy.  *Id*.  In opposing plaintiff's motion for collective certification, in *Morris*, defendants argued that plaintiffs' proposed conditional class "was overly broad insofar as it include[d] foremen and laborers who [] did not work at the same construction sites as plaintiffs." *Id*. at 270.  In finding that plaintiffs both (1) met their minimal burden at the conditional certification stage and (2) sufficiently alleged facts supporting the scope of the proposed collective, the court opined that "plaintiffs allege—and defendants do not dispute—that the Company centrally operates and controls *all* of its construction sites, including those where no named plaintiff worked.  In such circumstances, courts frequently authorize notice across all of the defendant's work sites."  *Id*. at 271 (emphasis in original).  Indeed, other courts in this district have followed this line of reasoning.  *See Capsolas v. Pasta Rest., Inc.*, No. 10 Civ. 5595, 2011

19

WL 1770827, at *3 (S.D.N.Y. May 9, 2011) (authorizing notice to all of defendants' restaurants, including those where no named plaintiff worked, when they "share[d] common ownership" and were "administered by the same company"); *Karic v. Major Auto. Cos.*, 799 F. Supp. 2d 219, 227 (E.D.N.Y. 2011) (granting certification across all of defendants' car dealerships when plaintiffs alleged "common ownership and control of all of the[ ] entities, including the three dealerships for which no plaintiff has yet appeared"); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 678 F. Supp. 2d 89, 93–94 (E.D.N.Y. 2010) (finding that plaintiffs, all of whom worked at the same restaurant, were similarly situated to employees at two other restaurants when all three locations were owned by the same individuals); *see also Guzelgurgenli v. Prime Time Specials, Inc.*, 883 F. Supp. 2d 340, 351–52, (E.D.N.Y. 2012); *Siewmungal v. Nelson Mgmt. Grp. Ltd.*, No. 11 Civ. 5018, 2012 WL 715973, at *3 (E.D.N.Y. Mar. 3, 2012).

In the instant case, Plaintiff has alleged that Defendant Tonyes is the sole owner of Defendant RNC and that he made all decisions concerning employee compensation rates and methods of pay.  Compl. ¶¶ 11-12.  Further, Plaintiff states that Defendant Tonyes operated RNC from "one home base of operations" located in Holtsville, New York.  Valerio Decl. ¶ 2; Compl. ¶ 10; *see also* Carillo Decl. ¶ 2.  Defendants do not dispute these assertions.[4]  As such, the Court follows the reasoning in *Morris* as well as that of other courts within this district and similarly

---

[4]      Defendants claim only that "[t]he majority of RNC's employees work at various construction sites in the Tristate area [and that] [e]ach of the construction sites is supervised by a different foreman who is responsible for overseeing the day to day operations. . . ."  Defs.' Opp'n at 3-4.  First, these statements do not undermine Plaintiff's allegation that RNC is centrally controlled and operated from the Holtsville location.  Second, to the extent Defendants rely upon and proffer information gleaned from Plaintiff's deposition, the Court declines to evaluate such evidence since to do so would once again require the Court to consider facts and weigh credibility which is improper at this preliminary stage.  *See Perkins*, 669 F. Supp. 2d at 219; *Garcia*, 2014 WL 2211958, at *6; *see also Bijoux*, 2015 WL 4505835, at *13 ("the focus of the court's inquiry is not on the defendants' evidence, but on whether the plaintiff[] have made their requisite showing.")

finds that based upon Plaintiff's allegations, the scope of Plaintiff's proposed notice with the modifications directed by the Court properly encompasses similarly situated laborers who work not only at Defendants' Holtsville location but those who are dispatched to Defendants' field construction sites located on Long Island as well.

In addition, to the extent Defendants assert that Plaintiff may only be considered similarly situated to non-managerial employees at Defendants' Holtsville location as opposed to non-managerial employees who work in the field — this claim similarly lacks merit. "Courts in this district and elsewhere routinely reject attempts to limit certification based on job function." *Mendoza v. Little Luke, Inc.*, No. CV 14-3416, 2015 WL 5918580, at *3 (E.D.N.Y. Oct. 9, 2015) (citing *Ritz v. Mike Rory Corp.*, No. 12-CV-367, 2013 WL 1799974, at *2 (E.D.N.Y. Apr. 30, 2013) (rejecting limiting conditional class to bartenders and instead, including all tipped service workers in conditional class); *Calderon v. King Umberto, Inc.*, 892 F. Supp. 2d 456, 464 (E.D.N.Y. 2012) (refusing to limit certification to positions held by named plaintiffs); *Iglesias–Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y.2007) (rejecting as frivolous defendant's argument that certification should be limited to duck feeders); *Summa v. Hofstra Univ.*, 715 F.Supp.2d 378, 391 (E.D.N.Y.2010) (certifying employees despite varying positions and functions)). As noted, the focus at the initial certification stage "is on the issue of whether the Plaintiffs were the victims of a common policy or plan which violated the law—and less so on whether the Plaintiffs performed identical job functions." *Cohan v. Columbia Sussex Mgmt., LLC*, No. CV 12-3203, 2013 WL 8367807, at *4 (E.D.N.Y. Sept. 19, 2013) (granting conditional certification where the plaintiffs "submitted evidence which suggests that the allegedly improper overtime policy was not limited to banquet servers, but rather was applied to all service employees"); *see also Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508, 517

(E.D.N.Y. 2011) ("It is not necessary for the purposes of conditional certification that the prospective class members all performed the same duties, or worked during the same time periods, or worked at the same locations as the named plaintiffs." (alteration and quotation marks omitted)).  Accordingly, "[i]n the Second Circuit, courts routinely find employees similarly situated 'despite not occupying the same positions or performing the same job functions and in the same locations, provided that they are subject to a common unlawful policy or practice.'" *Guaman v. 5 M Corp.*, No. 13 CIV. 03820, 2013 WL 5745905, at *4 (S.D.N.Y. Oct. 23, 2013) (quoting *Summa*, 715 F. Supp. 2d at 390).

Here, the issue is less one of job function than the argument Defendants are making about job location.  Notwithstanding that argument, Plaintiff has made a modest factual showing that he and the potential collective action members were victims of a common wage and overtime compensation practice which violated the FLSA, and thus were similarly situated.  *See, e.g.*, *Cohan*, 2013 WL 8367807, at *4.  The fact that there may be "variations in positions and job functions" among the proposed class "do[es] not, at this preliminary stage, change th[is] result." *Summa*, 715 F.Supp.2d at 391; *see, e.g.*, *Williams v. Twenty Ones, Inc.*, No. 07 Civ. 3978, 2008 WL 2690734, at *1–2 (S.D.N.Y. June 30, 2008) (certifying FLSA collective action of sports bar's office workers, waiters, bartenders, runners, and bussers where various violations of the FLSA alleged); *Fasanelli v. Heartland Brewery, Inc.*, 516 F.Supp.2d 317, 320, 322 (S.D.N.Y.2007) (certifying class of "all non-exempt persons employed by Defendants in any hourly position, including but not limited to waiters, bartenders, runners and/or bussers" where "all putative class members are employees of the same restaurant enterprise and allege the same types of FLSA violations").  The prospective collective therefore consists of all laborers who

performed their duties either at RNC's Holtsville location or who were dispatched or assigned to Long Island field location construction sites to perform their job duties.

Accordingly, the Court finds that Plaintiff has met his burden to show that the proposed class members, as modified by the Court, are generally "similarly situated." *See McGlone*, 867 F. Supp. 2d at 442; *Rubery*, 569 F. Supp. 2d at 336.  Therefore, the Court will conditionally certify the collective as outlined below.

### B.    Proposed Opt-In Class

As noted, Plaintiff moves for conditional certification of the following proposed opt-in class:

> [A]ll other current and former similarly situated non-managerial employees, employed since June 16, 2011.

*See* Malecki Decl. Ex. 10 [DE 31-12] (Proposed Notice).  The Court, however, finds this definition overly broad and is modifying the definition of the class to read as follows:

> All current and former laborers (carpenters, welders, mechanics, etc.) employed by RNC Industries, LLC since June 16, 2011, who worked or were dispatched to any of RNC's locations or field construction sites located in Long Island, New York.

The FLSA has a two-year statute of limitations except in the case of willful violations, for which the statute of limitations is three years.  *See* 29 U.S.C. § 255(a).  Plaintiff asserts in his Complaint that Defendants' violations of the FLSA were willful and the three-year statute of limitations should apply to those claims.  *See* Compl. ¶¶ 16-17, 45, 52.  "At the conditional certification stage, allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class." *Jie Zhang v. Wen Mei, Inc.*, No. 14- CV -1647, 2015 WL 6442545, at *5 (E.D.N.Y. Oct. 23, 2015) (citing *Summa*, 715 F. Supp. 2d at 388; *Francis v. A & E Stores, Inc.*, No. 06–CV–1638, 2008 WL 2588851, at *3 (S.D.N.Y. June 26,

2008) (noting that at the preliminary stage, "plaintiff's allegations of willful conduct . . . are sufficient to support defining the class based upon the three-year statute of limitations), *adopted as modified*, 2008 WL 4619858 (S.D.N.Y. Oct.16, 2008)); *see Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 268 n. 2 (E.D.N.Y. 2005) (finding allegation of willful violation justified notice based on a three-year statute of limitations period); *see also Alvarez*, 839 F. Supp. 2d at 587-88 ("The Plaintiffs have alleged willfulness in their Complaint . . . and the Defendants deny these allegations.  Courts in this circuit have generally held that where willfulness is in dispute, a three year statute of limitations applies at the conditional certification stage.").  As the Complaint contains allegations of willful conduct by Defendants, the Court finds it appropriate to apply the three-year statute of limitations under the FLSA at this stage of the proceedings.  *See, e.g.*, *Jie Zhang*, 2015 WL 6442545, at *5.

With respect to the calculation of the limitations period, courts often begin counting back from the date of the conditional certification order or the notice since the FLSA statute of limitations continues to run until a plaintiff consents to join the action.  *See* 29 U.S.C. § 256; *Ritz v. Mike Rory Corp.*, No. 12 Civ. 367, 2013 WL 1799974, at *3 (E.D.N.Y. 2013). "However, 'because equitable tolling issues often arise as to individual opt-in plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date.'"  *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187, 2014 WL 4593944, at *7 (S.D.N.Y. Sept. 15, 2014) (quoting *Trinidad*, 962 F. Supp. 2d at 564 n.14) (internal alteration omitted); *see, e.g.*, *Hamadou*, 915 F. Supp. 2d at 668; *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012); *Guzelgurgenli*, 883 F. Supp. 2d at 356; *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011).  The

Court therefore concludes that "the remedial purposes of the FLSA are best served" here by applying the three-year statute of limitations from the date of the filing of the Complaint in this action. *Fa Ting Wang*, 2015 WL 4603117, at *13; *Guzelgurgenli*, 883 F. Supp. 2d at 357 ("In light of potential issues with equitable tolling, the Court agrees that, in an abundance of caution, the notice should be sent to all relevant employees" for the period running from the date of filing of the complaint.) (citing *Whitehorn*, 767 F. Supp. 2d at 451); *see Trinidad*, 962 F. Supp. 2d at 564 (granting conditional certification for non-exempt employees who worked from the defendant from three years prior to the filing of the amended complaint).

Thus, FLSA conditional certification in this action is limited to claims arising from June 16, 2011 to the present.

Based on the foregoing analysis, the Court grants conditional certification to the opt-in class proposed by Plaintiffs. The Court designates this class as follows:

> All current and former laborers (carpenters, welders, mechanics, etc.) employed by RNC Industries, LLC since June 16, 2011, who worked or were dispatched to any of RNC's locations or field construction sites located in Long Island, New York.

**C.    Discovery of Identifying Information**

Plaintiff requests that the Court direct Defendants to produce information, in electronic format, containing the names, mailing addresses, telephone numbers, work locations, email addresses and dates of employment of potential collective members. *See* Plaintiff's Memorandum of Law in Support of Motion for Conditional Certification and Notice Pursuant to 29 U.S.C. § 216(b) (Pl.'s Mem.") at 11. Defendants have not addressed this specific request.

"In general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective members." *Velasquez v. Digital Page, Inc.*, No. 11-CV-3892, 2014 WL 2048425, at

25

*15 (E.D.N.Y. May 19, 2014) (citing *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 00637, 998 F. Supp.

2d 95, 2014 WL 702185, at *6 (E.D.N.Y. Feb. 25, 2014) ("In regard to requests for names, last

known addresses, telephone numbers (both home and mobile), e-mail addresses, and dates of

employment, courts often grant this kind of request in connection with a conditional certification

of an FLSA collective action.") (internal quotations and citations omitted); *Rosario,* 828 F. Supp.

2d at 522 ("The Court finds the disclosure of potential opt-in plaintiffs' names, last known

addresses, telephone numbers, and dates of employment to be appropriate."); *In re Penthouse*

*Executive Club Comp. Litig.*, No. 10 Civ. 1145, 2010 WL 4340255, at *5-6, (S.D.N.Y. Oct. 26,

2010) (finding the disclosure of names, addresses, telephone numbers, and dates of employment

to be "essential to identifying potential opt-in plaintiffs")); *see, e.g.*, *Fa Ting Wang*, 2015 WL

4603117, at *14 (collecting cases from the Eastern and Southern Districts of New York).  Courts

are reluctant, however, to authorize disclosure of private information, such as dates of birth and

social security numbers in the first instance and without a showing that the information is

necessary for the plaintiff to notify potential opt-ins of the collective action.  *See, e.g.*, *Jie Zhang*,

2015 WL 6442545, at *7 (granting the plaintiffs' request for a list of the names, addresses, phone

numbers, last known email addresses, work locations, and dates of employment for potential

plaintiffs, but declining request for social security numbers because the plaintiffs "have not

established a particularized need" for this information); *Velasquez*, 2014 WL 2048425, at *15

(directing the defendants to provide the plaintiffs with a list of the names, addresses, telephone

numbers, email addresses, and dates of employment for all potential class members, but not their

dates of birth and social security numbers); *Brabham v. Mega Tempering & Glass Corp.*, No. 13-

CV-54, 2013 WL 3357722, at *8 (E.D.N.Y. July 3, 2013) ("The purpose of the production of

potential opt-in plaintiffs is to enable Plaintiffs to notify them of the collective action . . . The

production of names, addresses, phone numbers and email addresses plainly serves that purpose, while birth dates and Social Security numbers are not necessary for Plaintiffs to perform their notification task.") (internal citation omitted); *Rosario*, 828 F. Supp. 2d at 522  ("In light of the privacy concerns regarding employees' dates of birth and social security numbers, the production of such information is unnecessary at this juncture.  If plaintiff is unable to effectuate notice on some potential opt-in plaintiffs with the information that is produced, plaintiff may renew his application for additional information regarding those specific employees.").

Accordingly, the Court is directing Defendants to provide Plaintiff's counsel, in a standard electronic format, a list of the names, addresses, telephone numbers, email addresses, work locations and dates of employment for all potential class members who worked at RNC for the relevant time period.  The list is to be furnished within 14 days of the entry of this Order and is to be treated by the parties as confidential.  To the extent that the parties have not previously entered into a Stipulation and Order of Confidentiality which includes this information, they are ordered to do so forthwith for this purpose.  If Plaintiff is unable to effectuate notice on some potential opt-in plaintiffs with the information that is produced, Plaintiff may submit a written request to obtain further information for the potential Opt-In Plaintiffs.

### D.    Form of Notice of Pendency and Consent to Join Form

Plaintiff has provided for Court approval a proposed Notice of Pendency and Consent to Join form.  *See* DE 31-12.  Defendants have interposed numerous objections to the overall form and content of Plaintiff's proposed Notice.  *See* Defs.' Opp'n at 10-13.  Defendants request an opportunity to engage in a meet-and-confer with Plaintiff's counsel to try to resolve these disputes.  *Id.* at 10.  In his Reply, Plaintiff responds to Defendants' objections and notes specific instances where Plaintiff agrees to certain changes requested by Defendants.  *See* Plaintiff's

Memorandum of Law in Further Support of Plaintiff's Motion for Conditional Certification and Notice Pursuant to 29 U.S.C. § 216(b) ("Pl.'s Reply") at 8-9.

"[T]he district court has discretion regarding the form and content of the notice." *In re Penthouse Exec. Club Comp. Litig.*, 2010 WL 4340255, at *4–5; *ABC Carpet*, 236 F.R.D. at 202 ("[T]he Supreme Court has noted that the "details" of notice should be left to the broad discretion of the trial court.") (citing *Hoffmann–La Roche v. Sperling*, 493 U.S. 165, 170 (1989)). Here, the Court directs counsel for both sides to meet-and-confer further to come up with an agreed upon Notice. That Notice is to be submitted to the Court no later than April 13, 2016.

At this time, the Court will not address Defendants' objections to the Notice since the Court has directed a further meet-and-confer. However, the Court refers counsel to some of its prior decisions in this area which counsel are encouraged to review as part of their meet-and-confer. *See, e.g.*, *Velasquez v. Digital Page*, No. CV 11-3892, 2014 WL 2048425, at *9-15 (E.D.N.Y. Jul. 25, 2014); *Sharma*, 52 F. Supp. 3d at 461-466. To the extent there are any objections remaining after the meet-and-confer, counsel are directed to submit a redline version of the proposed Notice to the Court by April 13, 2016 for review and determination.

### E.    Opt-In Period

Plaintiff requests that the Court set an opt-in period of 60 days from the date of the mailing of the Notice to potential plaintiffs. *See* DE 31-12. Defendants have not addressed this particular request. "[A] 60–day notice period for potential plaintiffs is common practice under the FLSA." *Cohan*, 2013 WL 8367807, at *12 (collecting cases); *see, e.g.*, *Fa Ting Wang*, 2015 WL 4603117, at *11 ("Courts in this Circuit 'routinely restrict the opt-in period to sixty days.'") (quoting *Velasquez*, 2014 WL 2048425, at *12) (collecting cases); *Whitehorn*, 767 F. Supp. 2d at

451-52. The Notice shall therefore reflect that opt-ins have 60 days to return the Consent to Join form to the Clerk of the Court.

### F. Language of Notice and Consent to Join Forms

Plaintiff asserts that the Court should "authorize that the notices, both mailed and posted, be translated into the Spanish language and circulated in both English and Spanish" since five of the Plaintiffs speak and otherwise communicate primarily in Spanish. Pl.'s Mem. at 12. Defendants do not object to this request. Generally, courts permit notice to be "translated into the mother tongue of non-English speaking groups of potential plaintiffs." *Colon*, 2013 WL 3328223, at *8; *Dilonez*, 35 F. Supp. 3d at 256; *Cano*, 2009 WL 5710143, at *10; *Sanchez v. El Rancho Sports Bar Corp.*, No. 13 CIV. 5119, 2014 WL 1998236, at *5 (S.D.N.Y. May 13, 2014) (permitting notice to be translated into Spanish). As such, the Court grants Plaintiff's request to post and mail the Notice in both English and Spanish.

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiff's motion for conditional certification as an FLSA collective action pursuant to Section 216(b) is GRANTED, subject to the limitations discussed herein. In sum, the Court certifies the following class:

> All current and former laborers (carpenters, welders, mechanics, etc.) employed by RNC Industries, LLC since June 16, 2011, who worked or were dispatched to any of RNC's locations or field construction sites located in Long Island, New York.

The Court further orders that:

1. Within 14 days of entry of this Order, Defendants are to produce a list of the names, addresses, telephone numbers, email addresses, work locations and dates of employment for all non-managerial employees who worked at RNC Industries, LLC dating back to June 16, 2011; and

2.      Within 21 days of entry of this Order, the parties are to engage in a good faith meet-and-confer and submit an agreed upon Notice to the Court by April 13, 2016.  In the event there are objections remaining after the meet-and-confer, counsel are directed to submit a redline version of the proposed Notice to the Court by April 13, 2016 for review and determination.


**SO ORDERED.**


Dated:  Central Islip, New York
            March 22, 2016


                                                            /s/ A. Kathleen Tomlinson
                                                            A. KATHLEEN TOMLINSON
                                                            U.S. Magistrate Judge